**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| **PAUL WILKINS,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **No. 15-_____** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **Defendant.** | : | |

_____

## COMPLAINT

### I. PRELIMINARY STATEMENT

1.      On May 8, 2012, Plaintiff Paul Wilkins, while incarcerated at the Federal Detention Center – Philadelphia ("FDC"), fractured his right ring finger.  Shortly thereafter, medical staff diagnosed the injury and noted that Mr. Wilkins required orthopedic treatment. Inexplicably, however, medical staff at the FDC and at two other facilities in the Federal Bureau of Prisons ("BOP") failed to refer Mr. Wilkins for timely treatment.  Due to that extreme delay, Mr. Wilkins' fractured finger healed improperly, and, as a result, he suffers from permanent disfigurement and disability.

2.      Mr. Wilkins now brings this action against Defendant United States of America in order to seek compensation for the substantial damages he has suffered as a result of the extraordinary negligence of BOP medical staff.

### II.  JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this Complaint under 28 U.S.C. §§ 1331, 1346(b).

4.      On or about March 17, 2014, Mr. Wilkins submitted a timely Administrative Tort Claim to the BOP.  In correspondence dated September 16, 2014, the BOP denied the claim.

5.      Venue is proper in this District under 28 U.S.C. § 1402(b) as the actions at issue in this matter occurred principally in Philadelphia, Pennsylvania within the Eastern District of Pennsylvania.

### III.  PARTIES

6.      Plaintiff Paul Wilkins was at all times relevant to this Complaint incarcerated in BOP facilities.  He is no longer incarcerated and presently resides in Trenton, New Jersey.

7.      Defendant United States of America is the appropriate defendant under the Federal Tort Claims Act.

8.      At all times relevant to this Complaint, all medical personnel mentioned below were employees of BOP and Defendant United States of America and were acting within the scope and course of their employment.

### IV.  FACTS

9.      In May 2012, Mr. Wilkins was incarcerated at the FDC having been sentenced for violating the terms of supervised release arising out of a conviction in the U.S. District Court for the Eastern District of Pennsylvania.

10.      On May 8, 2012 Mr. Wilkins injured the fourth finger (or, "ring finger") on his right hand while playing basketball.

11.      FDC medical staff arranged for an X-ray study the next day, and that study confirmed a "4th PIP dislocation with palmar subluxation and proximal retraction."

12.      Reasonably trained physicians know and understand that this injury is serious but easily treatable.

13.     Reasonably trained physicians understand, further, that such injuries require timely treatment as any delay in treatment will result in improper healing which will, in turn, aggravate the injury.

14.     Upon review of the X-ray images and reports, on May 9, 2012, Dr. Stephen Hoey, a physician employed by BOP and assigned to the FDC, noted that an "[a]ttempt at closed reduction would probably disrupt fracture fragments at distal aspect of prox. Phalanx."

15.     Dr. Hoey noted that, in light of the anticipated difficulties of a closed reduction procedure, Mr. Wilkins required an orthopedic consultation.

16.     Mr. Wilkins was informed of the fact that his injury would require treatment by an orthopedic specialist.

17.     As of May 13, 2012—five days after the injury and four days after Mr. Wilkins was told he needed treatment with an orthopedist—Mr. Wilkins had not received any further treatment.

18.     Mr. Wilkins submitted an "Inmate to Staff" message expressing concern that any further delay in treatment of the joint would cause the joint to heal improperly.

19.     Notwithstanding clear notice that Mr. Wilkins required timely treatment with an orthopedist, Dr. Hoey and other BOP employees failed to ensure that Mr. Wilkins would receive a timely orthopedic consultation.

20.     Instead, at some point between May 13, 2012—when Mr. Wilkins complained about the delay in treatment—and May 17, 2012, BOP transferred Mr. Wilkins from FDC-Philadelphia to the Federal Transfer Center in Oklahoma City, Oklahoma.

21.     There, on May 17, 2012, BOP medical staff took another X-ray and confirmed what BOP staff already knew, that Mr. Wilkins had a fracture in the PIP joint of his ring finger.

22.     On May 19, 2012, Mr. Wilkins was seen by Physician's Assistant S. Johnson ("PA Johnson"), a BOP employee assigned to the Federal Transfer Center, who attempted to manually reduce the dislocation.

23.     PA Johnson did so notwithstanding the notation made by Dr. Hoey, which was available in Mr. Wilkins' BOP medical records, that any efforts to manually reduce the dislocation—that is, a closed reduction—could cause Mr. Wilkins further injury.

24.     After three attempts, PA Johnson's efforts to reduce the dislocation were not successful.

25.     The attempts to perform a closed reduction of Mr. Wilkins' injury more than ten days after the injury caused Mr. Wilkins extraordinary pain.

26.     After failing to successfully reduce the dislocation, PA Johnson instructed Mr. Wilkins that, because he was expected to be moved to a different facility, he should tell medical staff at that facility about his injury and request an orthopedic consult.

27.     Notwithstanding clear notice that Mr. Wilkins required urgent treatment with an orthopedist, PA Johnson and other BOP employees failed to ensure that Mr. Wilkins would receive a timely orthopedic consultation.

28.     Instead, at some point after May 21, 2012, Mr. Wilkins was moved to yet another facility, United States Penitentiary—Marion in Marion, Illinois.

29.     On June 6, 2012, Mr. Wilkins was seen by Dr. David Szoke, a BOP employee assigned to the United States Penitentiary—Marion.

30.     Dr. Szoke noted Mr. Wilkins' injury and then wrote an inaccurate note ordering a recheck of X-rays films of the left fourth finger, as opposed to the right fourth finger which was injured.

31.     Dr. Szoke noted further that the case would probably be submitted to the "utilization review committee," a committee at the prison tasked with deciding whether outside consultation and treatment with a medical specialist was necessary and appropriate.

32.     On that same date, yet another X-ray was ordered.  And yet again, the X-ray confirmed the injury to Mr. Wilkins' right ring finger.

33.     On June 8, 2012, Mr. Wilkins was seen again by Dr. Szoke who discussed with Mr. Wilkins the possibility of attempting a closed reduction of the dislocation.

34.     Mr. Wilkins, having experienced extraordinary pain when PA Johnson attempted such a closed reduction notwithstanding Dr. Hoey's earlier notation that such a procedure could cause Mr. Wilkins further injury, informed Dr. Szoke that he wanted to be anesthetized before any such procedure.

35.     Dr. Szoke informed Mr. Wilkins that the case would thus be submitted to the utilization review committee to make a decision whether Mr. Wilkins could be seen by an orthopedist.

36.     The request for Mr. Wilkins to be seen by an orthopedist was granted on June 11, 2012.

37.     Notwithstanding clear notice that Mr. Wilkins required timely treatment with an orthopedist, Dr. Szoke and other BOP employees failed to ensure that Mr. Wilkins was sent out for the orthopedic consultation.

38.     Mr. Wilkins was released from BOP custody on June 21, 2012; he never received any consultation or treatment with an orthopedist.

39.     BOP employees knew that Mr. Wilkins required treatment with an orthopedist as early as May 9, 2012.

40.     BOP employees knew, further, that the failure to ensure the timely provision of that treatment would result in a serious aggravation of Mr. Wilkins' injuries.

41.     Notwithstanding this knowledge, BOP employees failed over a period of six weeks to ensure that Mr. Wilkins would receive the needed orthopedic treatment.

42.     As a result, and as predicted in Mr. Wilkins' complaint of May 13, 2012, his injured finger healed improperly thus leaving him with a permanently disfigured and virtually unusable finger.

43.     Mr. Wilkins' swollen and immobile finger impedes the use of his dominant hand, and, as such, Mr. Wilkins is limited in any activities requiring the use of his dominant hand, including work, recreation and basic hygiene.

44.     As a result of the actions and inactions of BOP employees as described above, Mr. Wilkins has suffered substantial damages including physical pain and suffering, emotional trauma, loss of the enjoyment of life and financial damages, some or all of which may be permanent.

### V.  CAUSE OF ACTION

**Count I**
**Plaintiff v. Defendant United States of America**
**Federal Tort Claims Act – Negligence**

45.     The BOP employees referenced above, including Dr. Hoey, PA Johnson and Dr. Szoke, owed a duty to plaintiff, breached their duty to plaintiff, and, as such, were direct and proximate causes and substantial factors in bringing about plaintiff's damages outlined above.

46.     The actions of the BOP employees referenced above, including but not limited to Dr. Hoey, PA Johnson and Dr. Szoke constitute the tort of negligence under the laws of,

respectively, the Commonwealth of Pennsylvania, the State of Oklahoma and the State of Illinois.

47.     Under the Federal Tort Claims Act, defendant United States of America is liable for these actions.


**Wherefore**, plaintiff Paul Wilkins respectfully requests:

A.     Compensatory damages;

B.     Reasonable attorneys' fees and costs;

C.     Such other and further relief deemed just and appropriate.


Jonathan H. Feinberg
I.D. No. 88227
KAIRYS, RUDOVSKY, MESSING & FEINBERG
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
(215) 925-4400
(215) 925-5365 (fax)
jfeinberg@krlawphila.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

PAUL WILKINS,                                    :
                                                 :
               **Plaintiff,**           :          **CIVIL ACTION**
                                                 :
          **v.**                       :          **No. 15-_____**
                                                 :
UNITED STATES OF AMERICA,                        :          **JURY TRIAL DEMANDED**
                                                 :
           **Defendant.**          :

_____

## CERTIFICATE OF MERIT AS TO DR. DAVID SZOKE

    I, Jonathan H. Feinberg, pursuant to 28 U.S.C. § 1746 declare under penalty of perjury that the below is true and correct:

1.    I have consulted and reviewed the facts of this case with a licensed physician whom I reasonably believe (i) is knowledgeable in the relevant issues involved in the particular action; (ii) practices or has practiced within the last 6 years or teaches or has taught within the last 6 years in the same area of health care or medicine that is at issue in the particular action; and (iii) is qualified by experience or demonstrated competence in the subject of the case.

2.    The reviewing licensed physician has determined in a written report (a copy of which is attached), after a review of the medical record and other relevant material involved in the particular action that there is a reasonable and meritorious cause for the filing of such action.

3.      I have concluded on the basis of the reviewing licensed physician's review and

consultation that there is a reasonable and meritorious cause for filing of this action.


Date: <u>January 13, 2015</u>                          /s/ Jonathan H. Feinberg
                                                       KAIRYS, RUDOVSKY, MESSING & FEINBERG
                                                       The Cast Iron Building
                                                       718 Arch Street, Suite 501 South
                                                       Philadelphia, PA 19106
                                                       (215) 925-4400
                                                       (215) 925-5365 (fax)
                                                       *Counsel for Plaintiff*



February 25, 2014

Jonathan H. Feinberg, Esquire
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106

RE:   Paul Wilkins
      Date of Injury: May 8, 2012

Dear Mr. Feinberg,

I had the opportunity to review the records on Paul Wilkins. The patient is 29 years old and I have been provided with medical records from the Bureau of Prisons, photographs of the patient's dominant right hand taken on July 6, 2012, and six pages of documents supplied by Mr. Wilkins, including his complaints to the correctional staff.

**History of Present Illness—**

The patient suffered a dislocation of his dominant right ring finger proximal interphalangeal joint on May 8, 2012. At the time he was incarcerated and was playing basketball. Radiographs were taken the next day that confirmed a dislocation of the ring finger PIP joint with a volar subluxation and proximal retraction. He was seen by Dr. Stephen Hoey who reviewed the radiographs and felt that an attempt at a close reduction would disrupt the fracture fragments in the distal aspect of the proximal phalanx. Dr. Hoey stated that he would obtain an orthopedic consultation.

By May 13, 2012, the patient had not received any further treatment and submitted a memo expressing his concern for the delay in treatment.

On May 17, 2012, the patient was transferred to another federal prison, located in Oklahoma City, Oklahoma. Radiographs were taken and he

Paul Wilkins
February 25, 2014
Page 2

continued to demonstrate a dislocation of the proximal interphalangeal joint.

On May 19, 2012, the patient was seen by Physician's Assistant S. Johnson who attempted to perform a closed reduction. Three attempts were made and none were successful in reducing the fracture dislocation. Another x-ray was performed on May 21, 2012, which confirmed the continued presence of a dislocation, but there was no mention of a fracture.

Unfortunately, the patient was scheduled to be moved to another location and the patient was informed that he would obtain an orthopedic consultation after his move. The patient was then moved to a prison in Marion, Illinois.

On June 6, 2012, he was seen by Dr. David Szoke who suggested that the case be submitted for utilization review and an orthopedic consult be obtained. Radiographs performed on June 6, 2012, confirmed continued dislocation.

On June 8, 2012, the patient was seen by Dr. Szoke who wanted to manipulate the finger without anesthesia and the patient stated that he would not undergo the manipulation without anesthesia.

A consultation had in fact been granted and he was to see an orthopedic surgeon on June 11, 2012. However, he was released from custody on June 21, 2012, without the examination or treatment being completed.

The patient states that he did not have insurance and has not undergone any further treatment.

Review of the photographs revealed obvious deformity of the proximal interphalangeal joint of the dominant right ring finger. There is 45 degrees of valgus angulation, considerable capsular swelling, and a 45-degree flexion contracture. There was no pull through the tendons and

██████████████

Paul Wilkins
February 25, 2014
Page 3

no active flexion of the DIP joint. The photographs also revealed a rotational abnormality in addition to the angular abnormality.

**Past Medical History—**

The past medical history is significant in that he suffers from allergies and requires inhalers for his asthma and he is unable to take aspirin.

**Diagnosis—**

> Fracture Dislocation of the Dominant Right Hand, Ring Finger, Proximal Interphalangeal Joint.

**Discussion—**

This patient suffered a relatively common fracture dislocation, the mechanism being a jamming of the finger. Normally, the patient is given a local anesthetic and when done in a timely fashion within one or two days, the likelihood of successful reduction is extremely high; and while the patient would be expected to experience some capsulitis of the finger, the ultimate recovery would be expected to be excellent with no long-term restrictions and no long- term impairment.

The orthopedic care provided to Mr. Wilkins was well below the accepted standards and certainly a violation of the generally accepted standards of care. As a result of the egregious delay and lack of treatment, this patient will suffer permanent and severe impairment, and the delay will absolutely cause the treatment to be much more severe and most likely require fusion, prosthetic replacement of the PIP joint or even ray resection of the ring finger.

As mentioned above, had the patient received reasonable care in a reasonable period of time, that being a closed reduction under local anesthesia within a few days of the accident, he would have recovered well. Aside from capsulitis, which would have resolved, he would have no permanent injury.

Paul Wilkins
February 25, 2014
Page 4

In his present condition, the patient has impairment of the finger that is so severe that through a quadriga effect it interferes with the other fingers of the hand causing him to have severe restrictions in use, where he will be capable of only sedentary activities of a nonrepetitive nature.

With regard to the future, there are significant angular and rotatory contractures and the likelihood of even an open reduction being successful is extremely poor, in that the contracture tissues would require either an interpositional arthroplasty with considerable shortening of the finger or an arthrodesis or fusion of the PIP joint. In fact, the injuries may be severe enough that the patient would require a ray resection or amputation of the ring finger. It is clear, that from July 6, 2012 to the present, with the severity of the contracture of the scar, the prognosis of the finger is extremely poor.

In summary, it is my opinion within a reasonable degree of medical certainty that the above referenced practitioners in causing the delay in providing appropriate care for this injury is definitely a violation of the accepted standards of care. The delay caused what is ordinarily a relatively common and easily treated injury to regress to one that would carry an extremely poor prognosis with a 100% likelihood of permanent restrictions and that ultimately there is a complete loss of use of the finger and that due to quadriga effect, this is not a specific loss but one that affects the entire hand and would interfere with any significant use.

